## WILEY v. NATIONAL BROADCASTING CO.

No. 21026, S.

District Court, N. D. California, S. D.
Feb. 15, 1940.

Courtney Moore and James Naylor, both of San Francisco, Cal., for plaintiff.

Frederick Leuschner and Richard H. Graham, both of Los Angeles, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff, author and writer of fiction, seeks an injunction and damages against defendant, basing his suit upon the common law ground of "unfair competition." Plaintiff claims that he created a humorous negro character named "Wildcat" around which he wrote numerous stories published in magazines and books, and which was also used in the making of six 2-reel motion pictures. The stories proved popular, a valuable source of income to their author, and he therefore claims a property right in the name "Wildcat." Plaintiff claims that defendant, with full knowledge of plaintiff's rights, "unfairly and in bad faith" used the name "Wildcat," applying it to a negro character in one of its radio programs, "for the express purpose of capitalizing upon the goodwill and value created in the word 'Wildcat' * * * by the plaintiff."

Counsel for plaintiff contends that the word "Wildcat" is fanciful and was exclusively appropriated as the name of a negro character, and that this name as such is plaintiff's property. Counsel for defendant argues that "Wildcat" is merely a descriptive word which has no secondary meaning and may not be exclusively appropriated.

Upon the facts of the case, I think it is unnecessary to discuss this interesting point. The evidence shows that the defendant produces two types of radio programs, one known as a "commercial," which is paid for by a sponsor, and the other as a "sustaining," which is at the expense of defendant. Defendant produced a "sustaining" program entitled "Sons of the Lone Star," prepared by one of its script writers. The serial contained 184 episodes, in seven of which a minor negro character named "Wildcat" appeared. The serial, of doubtful literary merit, consists of a number of dialogues strung together with a semblance of continuity. The script writer testified that he prepared his copy only a week in advance of the broadcast; that he had known a pugilist and wrestler in Texas called "Wildcat," having the figure of a wildcat tattooed upon his chest, and who clowned in the ring. It was common practice for negroes in the South to apply to themselves names of animals. The witness had written and produced a radio program in Texas in which one of the characters was a negro named "Wildcat." Under the circumstances it seemed perfectly nat-

ural for him to interject into defendant's serial a similar character. Further, as showing that the use of the negro character named "Wildcat" in the defendant's serial was minor and incidental, it appears that after seven episodes the character was dropped. A week later plaintiff, through his attorney, notified defendant to discontinue the use of the name "Wildcat" applied to a negro character.

■ The suit is for "unfair competition," the basis of which is fraud. Was there an intention upon the part of defendant to deceive the public? Was the public deceived by defendant's acts? Was plaintiff damaged in any way by the acts of defendant? Upon a consideration of the whole case, I think each question must be answered in the negative. The burden is upon plaintiff to prove his case by a preponderance of the evidence, and this he has failed to do.

Plaintiff will take nothing by his suit, and defendant will have judgment for its costs. Counsel for defendant will submit findings of fact and conclusions of law in accordance with court rule #42.

It is so ordered.